Thank you, Your Honor. We'll move to our third case of the morning. There's multiple appeals numbers here, but the lead appeal number is 22-1743, Richard Mazurek v. Metalcraft of Mayville. And Mr. Krukowski, good morning to you. We'll hear from you. Again, good morning. You may please the Court. My name is Tom Krukowski, and I represent Metalcraft, the appellant here. This Court's decision in Inouye T.C.I. I think summarizes our argument here. When this Court said, quote, It's easy to start, suits are easy to start, hard to defend. The best way to control unjustified litigation tactics is to have those that cause the, those tactics that create the cost should bear them. By introduction, let me just say that this case started October 17, 2017, over five years ago with 1,000 employees. It was a class action and a collective action, or 16B in Rule 23, that was dismissed voluntarily after we filed and served, I should say, served the safe harbor letter. Immediately thereafter, the plaintiffs and their lawyers filed 25 what we consider to be baseless lawsuits. As a matter of fact, the district court referring to these filings said they were filed in almost every district court within the Eastern District of Wisconsin, all 25. Furthermore, the district court refers to them as tripled, so, you know, a comment out of Star Wars. Nine plaintiffs were forced to dismiss their lawsuits for lack of prosecution of their reasons, which would remain 16 cases that started the ball rolling for the, what I would characterize as being the scorched earth tactics used by the plaintiffs with the attitude of damn their torpedoes, full speed ahead. Hawks Quindell, the law firm representing all these plaintiffs, had over 30 months during the class action proceedings to do discovery before they then filed the 25 individual lawsuits, nine of which were dismissed, 16 of which survived, 16 of which are pending before this court. And what was established during that 30 months, which was extensive discovery and more discovery, after the filing of individual lawsuits, another 21 months or 51 months, the district court in evaluating this case had to figure out how he was going to deal with 16 cases. So he gave both the plaintiff two cases and the defendant two cases and said, you tell me what your case is all about and see if you can win summary judgment. Upon submitting summary judgments, both the plaintiffs and defendants, the court said all four cases are dismissed, even though the defendant didn't file a motion for dismissal or summary judgment on their cases, saying that plaintiffs can only muster speculation and guesswork to prove their claims. And it went on. We filed for sanctions under Rule 11. Rule 11 sets the ground rules for litigation, and we feel those rules have been violated. We think there's been abuse of discretion here. We're also saying that the deference to the district court is missing for three reasons. One is there's no way for this district court to find that there was a certification or could the plaintiff certify in any one of these 16 cases that they had evidence or was well-grounded on evidence or had evidentiary support. Secondly, there wasn't a smidgen of pretrial investigation, and in these cases we'll discuss that. And third, and that was ignored by the judge in the district court in denial of sanctions, thirdly, the district court ignores that the scorched-earth tactics of the plaintiffs was a prohibition under Rule 11, again, the ground rules for litigation and the cost. In terms of abuse of discretion and the lack of deference is found in the cryptic comments by the district court judge when he says, number one, he says plaintiffs already lost, sanctions being overkill, and our motion for sanctions was petty bickering. First off, with regard to the already lost and as far as the concern for overkill, that's a non-secular because it doesn't follow. It's the very fact that the 16 cases were dismissed because they were baseless and no sympathy for the dismissal, but more importantly, what the court does with that statement, it eviscerates all of Rule 11, or at least ignores Rule 11 in the fact that it sets the ground rules for how we should litigate cases in the federal court system. Overkill is also another overstatement or misplaced. The only overkill here was the scorched-earth tactics of the plaintiffs in litigating the case and Middlecraft having to endure the continued defense of his innocence. We say erroneous view of the facts and law. The denial of sanctions was an abuse of discretion because there are six layers of frivolity in this case. Any one layer is sufficient to find sanctions. One, abuse of, there's no admissible evidence under 602. Plaintiffs shift their emphasis onto 406 or routine. There was none. No pre-filing investigation. Four, unnecessary increase in litigation, a prohibition of Rule 11. No possible claim under the Portal of Portal Act, an amendment to the Fair Labor Standards Act. No possible claim under the de minimis doctrine. Number one, no admissible evidence. The district court, and when we're referring to this, we're not talking about submitting to the court testimony or depositions or transcripts or documents. We're saying these are findings that the district court made in the summary judgment proceeding. Quote, can only muster unreliable speculation and guesswork. Quote, no admissible evidence. Quote, cannot satisfy limited burden. Quote, not an open invitation to guess or invent work post hoc. Quote, no memories and no prospects of recovering them. Quote, in short, none of the four plaintiffs in this case has evidence to support their claims. You can't have it both ways. You can't say all what you just said, what the judge said, and then later on deny sanctions because there might be some facts. Mr. Krakowski, can I ask you a question? I'm going to ask this of Appalese. I'm completely with you that the standard under Rule 11 is certainly not plaintiffs have already lost, sanctions would be overkill. That is unequivocally not the standard. I read these two orders, and I would have bet a lot of money that they were written by two different people, okay, the summary judgment order. Now, the issue is the abuse of discretion standard, I think, for your client. But the question I have for you is procedurally in the Eastern District of Wisconsin, in most districts where you file related litigation, you file 25 lawsuits, individual lawsuits against individual or against the same defendant, you have to notify the clerk that they're related. They all immediately then get assigned to the same judge, even though there are 25 different pieces of litigation. It's not what happened here. And I'd like you to comment on that and why. I mean, it seems to me that perhaps the plaintiff was looking for perhaps the best judge that they could find for their case in the Eastern District of Wisconsin. But maybe that wasn't the case. How did this shotgun approach work? Well, because it lends itself to the fourth element I said before, the unnecessary increased litigation costs. No, no, no. I want to say procedurally, how did they get in front of all these different judges in the Eastern District of Wisconsin? And then Judge Ludwig said, well, wait a minute, they're all going to come to me and I'm going to consolidate them for discovery. Why were they not all originally assigned to the same district court judge? I can't answer that question. I'm not the plaintiff's counsel. But they basically filed every individual lawsuit, all 25 lawsuits. And they, under the clerk's procedure, then were assigned to 25, the 25 cases were assigned to practically every judge in the Eastern District. Were they filed at the same time? Yes. And is there any requirement in the Eastern District and the local rules in the Eastern District of Wisconsin that you notify the clerk that they're related litigation? I'm not aware of any that specifically required the plaintiffs in this case to make that motion or consolidate. It would be a separate, distinct motion to consolidate these cases, which the judge did it on his own. After the judge heard us complaining, sua sponte, he just says, okay, stop. I'm not going to deal with this anymore. We're going to consolidate all these cases to which we said thank you and agreed with him in terms of now we could isolate the issues, particularly for summary judgment, and that's how we dealt with it. When we're dealing with this issue of evidence, no evidence for the judge's evaluation, what he ignored, take the case of Richard Mazurik, the lead plaintiff in this case. He testifies in his deposition. His lawyer to try to rehabilitate him in the deposition says, Mr. Mazurik, why do you continually use the word speculation, guesswork, and conjecture in answer to the company's questions? Mazurik answers, because I have no proof. Then the lawyer puts the last nail in the coffin when he says specifically to rehabilitate the witness, he says, quote, and when you say you have no proof, are you talking about you don't have any written proof? Then Mazurik then closes the coffin when he says, written, verbal, any kind of picture, nothing. Let me repeat that. Written, verbal, any kind of picture, nothing. A lawyer sitting through that deposition and three months later signing and filing a complaint and seeing there's a claim, a false claim, there's no way to certify it. It's impossible to certify a claim when your client's already told you on earth they have no proof. But you're not objecting that a plaintiff can't rely on the reconstructed memories to bring an FLSA suit when an employer's timekeeping records are at issue. Correct. That's the Espenshede case that the court relies upon in denying sanctions. So the court's basically saying as far as they're concerned, we'll deal with those issues. So the court says, to your point, you can reconstruct or you can construct work time by memories. In Alston Brown case he relies upon denying sanctions. You can do it through triggering factors. What the district court denies or completely ignores is this. He says, quote, each plaintiff also rules out the possibility of triggering factors. Quote, with no access to memories and no prospect of recovering them, plaintiffs can offer nothing more than their bare allegations. That's 180 degrees. Opposite of what the law provides for. It shows in terms of the issue here that we're talking about it basically grounds for reversal. It's an erroneous view of the law because you have to have a memory. And he says you have none, no way to reconstruct it. And he said there's no triggering factors under Brown. So therefore we have an erroneous view of the law. Well, let me ask you about another ground you think is amenable to sanctions. It's this portal-to-portal arguments, de minimis arguments. I mean, I looked at the summary judgment briefing. Plaintiffs spend a lot of pages distinguishing the portal-to-portal cases and the de minimis cases and trying to show why their situation is distinguished from the precedent that you are relying on. That's argument. That's legal argument. Why is that frivolous? Why is an argument trying to distinguish yourself from precedent that other people think dooms you? How is that sanctionable? No facts to dispute. There's no facts as to what if these people could have performed some preactive work activity before employment. And the court said in its decision, which was not appealed, you didn't. You didn't have any evidence to support your position with regard to the portal-to-portal act. That was a footnote. It was a footnote. That was a footnote. The court spent a great deal of its order looking at your other sanction issues. Agreed. Would it be reasonable to conclude that if the court had come out the other way on the substance it spent time on, it might have spent more time on this portal-to-portal and de minimis stuff? I don't think you have to. He's looking for an afterthought. He's saying, after all of this, what I've just told you, in terms of no admissible evidence, et cetera, et cetera, he's saying, furthermore, you can't even bring case because of the portal-to-portal act and de minimis. He's taking the ribbon and putting it around the package and saying, as far as I'm concerned, there's no way you can have a case here. Under any set of circumstances, which gives us another layer of frivolity, whether it's a footnote or it's not a footnote, it is the judge's decision for which the plaintiffs have not appealed and basically becomes a decision of the court. Mr. Krukowski, what do you think the best authority is in the case law for your position? And the reason I ask you that question is, as you well know, there is a lot of litigation that is brought that fails on the basis of just very, very substantial shortcomings in evidence and raises summary judgment is entered. There's all kinds of opinions that say this claim, there's just no evidence to support it. And you would think, well, we should be able to go to our case law and find loads and loads of Rule 11 sanctions opinions. You really can't. But there are quite a few decisions discussing it. To your question, by the way, I'm trying to reserve some time for my rebuttal. Do I have some time? Yeah, go ahead. Okay, thank you. It starts with a Cooter Supreme Court decision where Senator O'Connor is saying, okay, fine. If you violate Rule 11, these are the consequences of violating Rule 11, and it's obviously what we're asking for here in terms of deterrence and in terms of restitution. Then we have this court's decision in Zabo. Then we have this court's decision in Assenecy. Then we have the Supreme Court's decision in many different cases cited in our brief in terms of law. Zabo is totally different, though. Zabo is a situation where the court, like in a sentence or a half a sentence, says, I don't think Rule 11 sanctions are warranted. But here you have a reasoned order. I mean, I know you don't agree with the reasons, but Judge Ludwig did. He wrote it down and he explained it. But in the context of Zabo, Zabo has given us what the law is. And what Jesus Brooks is writing about there is he's saying to us, he says, look, if you're going to violate the law, you've got to expect to pay. If you're going to violate the ground rules of Rule 11, you've got to expect to pay. That's the point of Zabo. But all the other cases that support this position are also cited in their brief and sit back and say, we can deal with it. We can deal with it. But if you violate this rule, the ground rules of litigation, you should expect to pay. Now, a few words on the issue of preclusion, which I heard you discussing in your prior case. Where the plaintiffs in this case, in the context of the Rule 56, say there's no pro-plaintiff evidence, there's no pro-plaintiff inferences, that finding of the district court at admission is what binds the court in Rule 56 and Rule 11. And this court's decision in Amterak also supports the position that, look, when you've got ancillary proceedings in both the Supreme Court's case, in the Cotter case and in the Zabo case, that these proceedings are collateral. But it doesn't stop the process. You don't eliminate preclusion, whether it's issue preclusion or whether it's a law of the case. The court is sitting back and saying, you're a stop from raising that issue. And as Posner in his decision articulates and says, both law of the case and collateral estoppel are flexible doctrines and classifications. It need not be critical. Why? Because all we care about, we don't reopen them. We don't re-litigate. All that what the judge said is binding in the subsequent proceeding or our proceeding in terms of Rule 11. Let's go to Mr. Vestia. We'll give you a couple minutes on rebuttal. I appreciate it. Thank you. Thank you, Your Honor. This case is mostly about the standard of review. In a Rule 11 sanctions ruling, it's an exercise of judicial discretion. And unless the judge abuses that discretion, the judge makes the decision and the Court of Appeals doesn't reverse it because the Court of Appeals would make a different decision. It's a matter of the institutional prerogatives of the district court. That point is made in the Cooter and Gell v. Hartmark's case, 496 U.S. 384 and 402. The district court is familiar with the issues and the litigants. The district court is better situated than the Court of Appeals to decide that issue. That's what happened in this case. The district court made the ruling on summary judgment based on its summary judgment analysis. And we haven't challenged that on appeals, so that's not a subject for the challenge. And then the district court had the judgment call after that when presented with the Rule 11 motions to decide whether the case was, even though it came up short on summary judgment, the kind of case that lacked good faith and therefore merited Rule 11 sanctions. And essentially, the district court is in a better position to discern good faith and bad faith because the district court judge spends a few minutes with the litigants on multiple occasions and is face-to-face with the litigants. And this judge decided in its Rule 11 decision that there was no bad faith. The judge specifically said in his decision all of the briefs were tied by citation to the factual record. And as I've pointed out, on brief in both levels, the district court and the Court of Appeals, the real question in this case was not whether there was evidence or not. Both parties worked from the same evidence. No party said that some of that evidence was a lie or a deceit or something like that. They both just drew different inferences from that evidence. And the question for the district court on summary judgment was, are those inferences reasonable inferences that are being proffered by the plaintiffs or are they not jury worthy because they don't constitute, as a matter of law, reasonable inferences worthy of a triable issue? I don't know about that. I read the summary judgment opinion as going further than that, as basically this is baseless. There is nothing to support these claims. So that's different than debates about inferences and what have you. There's a lot of pretty sharp language in the summary judgment order. That is true. And the case was characterized by that judge as being a weak case, but the judge did acknowledge that there was some evidence in the record that might support an FLSA case if that evidence was not contradicted by all the other evidence in the case. And that's why the judge made the ruling on summary judgment, that the facts did not support that position. I didn't read that in there. I read what I'm concerned about is that you have an abuse of discretion standard, okay, which is a very high standard. I agree with you. This case is about abuse of discretion. But what I read the district court saying in the summary judgment, and maybe you can tell me where the district court says there are facts, because he says handful of facts, but I don't see any description of them. He says this case is based on speculation and guesswork. And that first paragraph is really bad for your client. I mean, it's really bad. But then he issues the sanctions order and he says, let me read it, you know, plaintiffs have clearly lost, sanctions would be overkill. That is not the Rule 11 test. It's just not, okay. So the question is, can we look to the record and find facts that support the district court's, you know, handful of facts so it's not abuse of discretion. But what facts are there? I mean, your client filed a lawsuit, an FLSA lawsuit, for a plaintiff that worked for two weeks and never worked for 40 hours in either week. That is pretty bad conduct. Now, they dismissed it. But, boy, that, you know, you think about a lack of pre-filing investigation. It doesn't get much worse than that. Counsel, well, I don't agree that there was a lack of pre-filing investigation. I understand. I understand. I'm not asking you to agree with that. But counsel has mentioned the Missouri case as sort of the lead plaintiff case in his oral argument. And Missouri does say that he doesn't have any proof to support his claims. But if you think about it, the word proof is a lawyer term. It's a term he might not have understood and didn't understand what proof meant. If you took his entire testimony, which is in the record, take his entire testimony in totality, as a layperson, what he thought was non-proof was really evidence itself. It was his testimony when he reflected on his memory, trying to recall what had happened. Remember, this is occurring in an informational vacuum that was created by MetalCraft because MetalCraft didn't keep a time system that recorded accurately what its employees did. And so in that relaxed circumstance, we had a lower threshold for the evidence that we had to submit. I agree we didn't, according to the district court judge, we didn't meet that threshold. Your client didn't help itself very much when it submitted its damages spreadsheet. I'm not sure that that carries the day for the appellant here. But it certainly didn't help itself when you submit a damages spreadsheet that is absolutely contradicted by all the facts and the evidence. But Mr. Mazurek did testify that for about 14 minutes on a routine basis, each scheduled shift, he was there and he was obtaining tools or getting direction from his employer. That was the evidence that we believed when we filed this lawsuit and when we maintained the lawsuit that the court could take as the lower quantum of evidence that it needs in the presence of this time system for the court to be able to make reasonable inferences and therefore subject it to a jury as a triable issue that there were reasonable inferences that the court could draw. What we didn't agree with the court on, what we failed, according to the court's decision in the summary judgment motion, is the reasonableness of our inferences. We decided or we believed that we could submit reasonable inferences for the court and the court disagreed with those reasonable inferences. That's a matter of law. Whether the court thinks those are triable issues or not is a matter of law. And the court disagreed with us on that. It's not that we lacked any facts. We were citing facts for every fact we used in our briefing. We did a record citation. We did what conscientious lawyers do. We did what advocates do. We made something of our client's case that might not have been there for an objective observer, but we're zealous advocates who are representing our clients, and if there's any argument that supports our clients, we have to make that argument and we have to give the testimony in the character that best supports our client's case. And we fell short. So then the question became, in the Rule 11 proceedings, if that falling short was so terrible that it warranted sanctions, that it was so egregious that sanctions should be awarded. And in a Rule 11 case, the courts have to be concerned with putting a chill on the advocacy of attorneys by saying to an attorney, you're going to be sanctioned under Rule 11 unless you can prevail in the case. And that will put a chill on litigants' access to the courts, and that's ultimately a very big problem under federal law and constitutional law. And so the court has to be very careful not to chill a litigant who is bringing a case that may not ultimately prevail in a summary judgment motion or in a trial. The other thing that this case is about is it's about the meaning or the fundamental misconception of what the difference between summary judgment is and what a Rule 11 sanctions determination is. If a party lacks the facts to get to trial, the facts to get past summary judgment, my counterpart contends that that means essentially automatically that the case was not based on any evidence at all, and it's not grounded on evidence, then Rule 11 sanctions must apply. But I meant what I said on brief in this case. Zero pro plaintiff evidence and zero pro plaintiff inferences are the prerequisite for losing a summary judgment motion. So if it were true that you have zero pro plaintiff inferences and zero pro plaintiff evidence, if it was true that if that happens then you've got a Rule 11 sanctions case, then every single summary judgment motion anybody ever stood defeated on, at least on a factual issue, would then warrant Rule 11 sanctions. Well, that's not the law in the Seventh Circuit. The law in the Seventh Circuit is that a summary judgment defeat is not an automatic loss on a Rule 11 motion. And so there is a territory in between those two places where you can lose a summary judgment motion, but you made good arguments, you made arguable issues out of the case, and therefore you don't get Rule 11 sanctions. And who do we allow to make those decisions under the discretionary standard? We allow the federal district court to make the decision, make the judgment call, as to whether a summary judgment motion that fell short also falls short of the Rule 11 standard. And that is a judgment call under the case law, and the district court judge made that judgment call in this case and it should be affirmed on that basis. And, again, I want to mention that this is a case in which the reason there's a lack of evidence is partly a function  Metalcraft made the decision to schedule work times and then operate its time system in a way that didn't make accurate depictions of what a worker actually worked in the field on a given day. And under the case law that's well established under the FLSA, that made the best evidence unavailable, and that's the Brown versus Family Dollar case, 534, F3rd, 593. And that means that the less than the best evidence had to take center stage in this case as a function of decisions made by Metalcraft. And that is a lowering of the standard on summary judgment that induced my clients to believe that they could come forward with less evidence than an ordinary litigant would have to come forward with an accurate time frame and time accounting system, and that less than the best evidence would then be what it had to present on summary judgment. Unfortunately, Judge Ludwig disagreed, but the judge allowed, at least for Missouri, quote, somewhere in this jumble there are a handful of facts that might support an FLSA action. What the federal district court judge was doing there is acknowledging that there were facts that supported the plaintiff's position. They just weren't going to carry the day because they didn't lead to reasonable inferences that made a triable issue for a jury question, and that's how the defeat occurred on summary judgment. But that doesn't mean that there weren't any facts that supported my client's position. In context, the court just deemed that the proffered inferences did not meet the reasonableness test. Courts determine reasonableness of inferences as a matter of law. One thing that's difficult here is that the court could have said what you just said. The court what? The court could have said what you just said. It's, you know, reasonable inferences not supported here, et cetera, et cetera. But the court said somewhere there might be a handful. Not there is a handful. The court said somewhere in this pile there might be a handful. It's a different take on the case than you're presenting this morning. Sure. Which makes it a little more difficult here matching the two. And the court said that in the course of leading to us getting a defeat on summary judgment. When the court had the question of whether we had any facts at all to support us, the court referenced its previous acknowledgement that there were some facts in the record that would have supported our position. And so that is exactly the borderland between losing a summary judgment motion and being completely frivolous. That the court properly acknowledged exists and properly found that we were residing in in this case. And so that, yes, the court is going to characterize our case with a little more jaundice than I when it's leading to defeating our case than it is when it's leading to litigant prevailing in a case. That's just a natural consequence of the mission that the decision is on when it's aimed at that conclusion at the end. So in the final analysis of this case, summary judgment defeat does not mean that you lose the Rule 11 motion that follows it. And this court adopted a reasonable procedure for determining whether there was going to be merit to any of the 16 cases that are at issue on appeal. And led with the first four, that was a matter of its discretion. It was entitled to adopt that procedure, that reasonable procedure in order to operate. And the court decided the four cases that placed the metaphorical writing on the wall. And so the plaintiffs conferred with their attorneys and decided to not proceed with the other 12 because the evidence would have been relatively the same, the inferences would have been relatively the same. And they didn't have a large expectation, at least at the federal court level, they were going to get a better addressing of their case before the court. Okay, very well. Thank you, Mr. Rescio. Mr. Krakowski, we'll give you two minutes. Thank you. There's no evidence in this case. The judge says it over and over again. There's no admissible evidence. And this comment that you referred to might be something that's obviously speculative in and of itself and probably metaphysical because it's imaginary. There's nothing there to support your position. If you take that statement and anything else that the judge says, if you take them, whatever that is, which is nothing, it still comes down that you can't deny sanction based on a case that wasn't certified. You can't certify speculation. Speculation is not evidence. They cite the company records in terms of whatever that is. Under this court's decision, while records don't show anything, if you don't prove or have a memory of your working, you don't have a case, whether it be Kronowski in terms of working two weeks or the balance of it. Now, at least to say all of this brings up the issue of can you escape sanctions on Rule 11, the ground rules, by no certification of facts, no pre-filing investigations, not a smidgen, and basically unnecessary litigation, unnecessary cross-location. Seventy-four depositions, 125 documents, 253 interrogatories to prove what? Like the judge said, you can only muster speculation and guesswork. Furthermore, what you should be aware of is that in looking at this case and instructions to the district court and hopefully on a remand, you're looking at it and saying, look at counsel in this case. Basically, in the shrimp case, Judge Griesbach admonished this lawyer, saying you can't bring lawsuits in this court with speculation. But lo and behold, what he does and what Hawke-Squindell does is they bring 25 basic baseless lawsuits. Same thing. If the dismissal didn't deter, then obviously something more has to occur, and that's the restitution. If restitution is allowed here, we ask that this court reverse the judge in terms of sanctions for the reasons stated and that the court give instructions regarding the effective deterrence as well as restitution. If that can happen, then we can say again, suits are easy to file, hard to defend, and the best way to control unjustified legal tactics is for those that create those costs, bear them. Thank you, Your Honors. Thank you. We understand both sides' position. We'll take the case under advisement. Thanks to both parties.